UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WAYNE GILMORE                                    CIVIL ACTION

VERSUS                                           NO. 17-4176

AUDUBON NATURE INSTITUTE, INC.                   M.J. WILKINSON

## ORDER AND REASONS ON MOTION

This is an Americans with Disabilities Act ("ADA") action by plaintiff, Wayne Gilmore ("plaintiff"), against defendant, the Audubon Nature Institute, Inc. ("Audubon"). Plaintiff asserted claims against Audubon for its failure to comply with the building requirements of Title III of the ADA, 42 U.S.C. § 12181 et seq, at the facility known as Audubon Zoo. Record Doc. No. 1. Plaintiff sought injunctive and declaratory relief, attorney's fees, costs and expenses. Record Doc. No. 1, p. 6. The substantive claims were resolved by the court's entry of a consent decree that was agreed upon by the parties. Record Doc. Nos. 29; 31. The consent decree provides in pertinent part that "[p]laintiff is the prevailing party to this action." Record Doc. No. 31, at p. 9, ¶ 1.

As prevailing party, plaintiff filed his motion for attorney's fees and costs, seeking $70,380.00 in attorney's fees and $9,104.57 in costs. Record Doc. Nos. 39; 42-3; 45. Defendant filed a timely opposition memorandum, in which it concedes that plaintiff is entitled to an award of reasonable attorney's fees. Record Doc. 40, at p. 3. Defendant argues, however, that the amount of costs and fees sought by plaintiff is unreasonable.

Record Doc. No. 40, at p. 3. Plaintiff was permitted to file a reply memorandum, in which he attempted to explain in greater detail the reasons for the amount of hours billed and fees and costs sought, while supplementing his motion for attorney's fees with contemporaneous time sheets. Record Doc. No. 42-3; 45. Defendant then submitted a six-page sur-reply memorandum. Record Doc. No. 51.

Having considered the written submissions of the parties, the record, and the applicable law, I find that plaintiff's motion should be GRANTED IN PART AND DENIED IN PART. While an award of attorney's fees and costs is warranted, the amount of plaintiff's requested attorney's fees and costs must be reduced.

I.    PROCEDURAL BACKGROUND

Audubon "does not dispute the fact that Plaintiff is entitled to an award of reasonable attorney's fees; its opposition is instead based on the truly exorbitant amount of the request." Record Doc. No. 40, at p. 3. As noted above, the consent decree, to which defendant agreed, expressly identifies plaintiff as the "prevailing party." Under the ADA, an award of attorney's fees to the prevailing party is directed to the court's discretion. "In any action . . . commenced pursuant to this chapter, the court . . . , in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205 (emphasis added). The court's discretion is substantially circumscribed, however, by binding precedent.

"To be entitled to an award of attorney's fees, plaintiffs must either receive an

adjudicated judgment on the merits <u>or</u> <u>persuade</u> <u>the</u> <u>defendant</u> <u>to</u> <u>enter</u> <u>into</u> <u>a</u> <u>consent</u> <u>judgment</u> that provides for some sort of fee award."  Pamela S. Karlan, <u>Disarming the</u> <u>Private Attorney General</u>, 2003 U. Ill. L. Rev. 183, 207 (2003) (citing <u>Buckhannon Bd. &</u> <u>Care Home, Inc. v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 605 (2001); <u>Evans v. Jeff D.</u>, 475 U.S. 717, 742-43 (1986)).

The same "'considerations that govern fee-shifting under . . . 42 U.S.C. § 1988 apply to the ADA's fee-shifting provision, because the almost identical language in each indicates Congress's intent to enforce them similarly.'" <u>Deutsh v. Jesus Becerra, Inc.</u>, 668 F. App'x 569, 570-71 (5th Cir. 2016) (quoting <u>No Barriers, Inc. v. Brinker Chili's Tex.,</u> <u>Inc.</u>, 262 F.3d 496, 498 (5th Cir. 2001)).  The Fifth Circuit has "consistently acknowledged in civil rights cases" that "'a prevailing plaintiff . . . is <u>presumptively</u> <u>entitled</u> to <u>reasonable</u> attorney's fees, unless a showing of 'special circumstances' is made that would deem such an award unjust.'" <u>Id.</u> (quoting <u>Dean v. Riser</u>, 240 F.3d 505, 508 (5th Cir. 2001) (emphasis added).

Courts have indicated that such requests "should not result in a second major litigation." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983); <u>Assoc'd Builders &</u> <u>Contractors of La., Inc. v. Orleans Parish Sch. Bd.</u>, 919 F. 2d 374, 379 (5th Cir. 1990). Contrary to this admonition, plaintiff's motion was initially supported by a lengthy 23-page memorandum; the joint declaration of his two attorneys who recorded work on this matter; expert reports with their resumes and qualifications; an affidavit of attorney William Most

attesting to what constitutes a reasonable hourly rate in New Orleans; contemporaneous time sheets describing the work done by plaintiff's attorneys; interrogatories and requests for production of documents from plaintiff's counsel to defendant's counsel; emails between plaintiff's counsel and defendant's counsel concerning settlement; resumes of plaintiff's attorneys; travel receipts of plaintiff's counsel and experts; and invoices reflecting the costs expended on this litigation. Record Doc. Nos. 39-1 through 39-18. Defendant's opposition memorandum consisted of 17 pages, with attached suggested reductions to plaintiff's counsel's computation of billed time. Record Doc. Nos. 40 through 40-2. Plaintiff subsequently submitted a 10-page reply memorandum, to which he again attached a joint declaration of plaintiff's attorneys and contemporaneous time sheets describing the work done by plaintiff's attorneys. Record Doc. Nos. 42-2; 42-3; 45. Defendant then submitted a six-page sur-reply memorandum. Record Doc. No. 51.

Both sides agree that calculation of recoverable attorney's fees begins with the familiar lodestar evaluation, which involves multiplying the reasonable hourly rates of plaintiff's lawyers by the reasonable number of hours expended. Plaintiff seeks to recover $70,380.00 in fees, including 203.9 hours for one attorney billing at $300 per hour, and 30.7 hours for a second attorney billing at $300 per hour. Record Doc. No. 42-3.[1]

---

[1] Plaintiff's contemporaneous time sheets reflect that the total hours sought, after an exercise of billing judgment including reducing the total time by 1.1 hours "for time billed in error," is 234.6. Record Doc. No. 42-3, at p. 11. Adding together Mussman's adjusted hours and Ku's adjusted hours shows that plaintiff did not make this 1.1-hour adjustment (0.9 subtracted from Mussman's hours, 0.2 subtracted from Ku's hours) to each attorney's adjusted total hours. I have made that correction above.

Audubon argues that the requested time should be reduced because plaintiff's counsel spent excessive time on the matter. Record Doc. No. 40, at pp. 6-9. It also contends that plaintiff unreasonably incurred the higher billing rate of two senior attorneys, when the lower rate of a more junior attorney or paralegal was sufficient to handle such a routine, largely uncontested lawsuit. Id. at pp. 5-6. It also notes that a substantial sum of what is sought relates to the drafting of a motion for summary judgment, when the motion was never ruled on by the court and became unnecessary after the substantive claims were resolved by consent decree. Id. at pp. 9-10. Audubon also filed a sur-reply memorandum in opposition, Record Doc. No. 51, quoting Gilmore v. Elmwood South, L.L.C., 2015 WL 1245770 (E.D. La. Mar. 18, 2015) (hereinafter "Elmwood"), in which Magistrate Judge Knowles stated as to these same plaintiff's attorneys:

> This Court has searched the nation-wide Pacer internet website and Westlaw and has discovered that–as defendant puts it–"[t]his is not Plaintiff's counsel's first rodeo." This law firm has acted as lead counsel in hundreds of ADA cases throughout the country. As defendant notes, Mussman has represented Christopher E. Brown in approximately 111 Title III ADA actions against public accommodations in New York, Pennsylvania, Connecticut, and New Jersey since 2006. Gilmore himself has filed 13 lawsuits in Louisiana federal courts and has retained Mussman & Ku, PA [sic] to represent him in the majority of them.
>
> This Court has reviewed the complaints and the pleadings in a majority of the other lawsuits and finds them to be nearly identical to the ones filed here. For example, while the alleged violations may be slightly different in each case, the complaints are essentially–as defendant notes–"cut and paste" complaints. In addition, these are all Title III claims, and the law in each is the same. Moreover, the Court has reviewed several motions for attorneys' fees, and while there are difference s, the  majority of the law in each motion is identical, thus rendering much of the legal research largely unnecessary . . .

.

Elmwood, 2015 WL 1245770, at *5-6 (emphasis added). Defendant argues that Magistrate Judge Knowles's analysis is equally applicable to the instant matter. Finally, in response to plaintiff's assertion that defendant's opposition was "riddled with math errors," Record Doc. No. 45, at pp. 8-9, defendant revised its total reasonable amount of expenses calculation to $6,920.00 and total reasonable attorney's fees calculation to $13,242.50, arguing that the total reasonable amount should be $20,162.50. Record Doc. No. 51, at p. 5.

II.    STANDARDS FOR AN AWARD OF ATTORNEY'S FEES

As the parties agree, the lodestar method is routinely used to determine attorney's fee awards in federal civil actions and applies in this case brought under a federal statute. Under the lodestar method,

> [t]he determination of a fees award is a two-step process.  First the court calculates the "lodestar[,]" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.  The court should exclude all time that is excessive, duplicative, or inadequately documented.  Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)[, abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)].

Jimenez v. Wood Cnty., 621 F.3d 372, 379-80 (5th Cir. 2010) (citations omitted) (emphasis added).

"The lodestar may not be adjusted due to a Johnson factor, however, if the creation

of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting." Heidtman v. Cnty. of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992); Shipes v. Trinity Indus., 987 F.2d 311, 319-20 (5th Cir. 1993)); accord Perdue v. Kenny A., 559 U.S. 542, 546 (2010).

The Johnson factors are:

(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.

Johnson, 488 F.2d at 717-19.

"[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (citation omitted). Three of the Johnson factors, complexity of the issues, results obtained, and preclusion of other employment, are presumably fully reflected and subsumed in the lodestar amount. Heidtman, 171 F.3d at 1043 (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); Shipes, 987 F.2d at 319-22 & n.9). After Johnson was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent. The Johnson factors are taken into

account after the court has determined the lodestar amount.  Walker v. U.S. Dep't of Housing & Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of Burlington, 505 U.S. at 567).

The lodestar "is presumptively reasonable and should be modified only in exceptional cases."  Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993) (citing City of Burlington, 505 U.S. at 562); accord Perdue, 559 U.S. at 546, 552; Smith & Fuller, P.A. v. Cooper Tire & Rubber Co., 685 F.3d 486, 490 (5th Cir. 2012); Jimenez, 621 F.3d at 380. As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded.  Watkins, 7 F.3d at 457. Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards. Green v. Admin'rs of Tulane Educ. Fund, 284 F.3d 642, 662 (5th Cir. 2002), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63-64 (2006) (citing Walker v. U.S. Dep't of Hous. & Urban Dev., 99 F.3d 761, 769 (5th Cir. 1996); accord Hensley v. Eckerhart, 461 U.S. 424, 433–34 (1983). The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." Walker, 99 F.3d at 770.

"Moreover, the court need not explicitly calculate the lodestar to make a reasonable award."  No Barriers, Inc., 262 F.3d at 500-01 (citing Von Clark v. Butler, 916 F.2d 255, 259 (5th Cir. 1990); Wegner, 129 F.3d at 822-23).

> The fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Fox v. Vice, 563 U.S. 826, 838 (2011); see also Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1187 (2017). "If the district court has articulated and clearly applied the correct criteria, [the appeals court] will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions of fee awards consume more paper than did the cases from which they arose." In re High Sulfur Content Gas. Prods. Liab. Litig., 517 F.3d 220, 228-29 (5th Cir. 2008) (quotations and citations omitted).

When attorneys exercise inadequate billing judgment, an award may be reduced by a percentage intended to substitute for the exercise of proper billing judgment. See Banegas v. Calmar Corp., 2016 WL 6276779, at *1-2 (E.D. La. Oct. 27, 2016) (citing Fralick v. Plumbers and Pipefitters Nat. Pension Fund, 2011 WL 487754, at *3-4 (N.D. Tex. Feb. 11, 2011)); Smith v. Manhattan Mgmt. Co., 2016 WL 915272, at *4 (E.D. La. Mar. 10, 2016) (finding a 10% reduction for counsel's lack of billing judgment). See also Walker, 99 F.3d at 770 (reducing fee award by 15% for lack of billing judgment) (citing Leroy v. City of Houston, 831 F.2d 576, 586 (5th Cir. 1987) (reducing award by 13%)); see also Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 800 (5th Cir. 2006) (10% reduction for vagueness, duplicative work and lack of billing judgment); Hopwood v.

Texas, 236 F.3d 256, 279 (5th Cir. 2000) (25% reduction based on inadequate time entries, duplicative work product and lack of billing judgment); Coulter v. State of Tenn., 805 F.2d 146, 151 (6th Cir. 1986) (50% reduction for duplication of effort); Preston Expl. Co., LP v. GSP, LLC, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) ("Courts have reduced fees up to 50% for billing judgment in light of factors such as nature and extent of the work involved, the issues involved, and the complexity of the work;" reducing hours by 20% because (1) partners performed tasks more suited to associates or paralegals; (2) attorneys and paralegals billed for clerical tasks; (3) attorneys billed regular rates for unproductive travel time; (4) many billing entries are vague; and (5) case was overstaffed with partners who often duplicated each other's efforts) (citing Saizan, 448 F.3d at 800; La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 336 (5th Cir. 1995) (hereinafter "LP&L"); Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012) (50% reduction); Devices, Inc. v. Sr. Operations, Inc., 2009 WL 5171746, at *1 (N.D. Tex. Dec. 29, 2009) (20% reduction)); Harkless v. Brunner, 2011 WL 2149138, at *2 (N.D. Ohio May 31, 2011) (50% reduction); Yelton v. PHI Inc., 2012 WL 3441826, at *8 (E.D. La. Aug. 14, 2012) (50% reduction); Neles-Jamesbury, Inc. v. Bill's Valves, 974 F. Supp. 979, 988 & n.22 (S.D. Tex. 1997) (same).

Although the party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorneys'

qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted. Hensley, 461 U.S. at 433; Wegner v. Std. Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997); LP&L, 50 F.3d 319, 329.

It is worth noting that total fee awards greatly vary in other ADA cases filed in this district based on the individualized analysis of each case. See, e.g. Herbert v. New Orleans City, 2017 WL 3216583, at *9 (E.D. La. July 28, 2017) (awarding $11,399.70 in attorney's fees at a rate of $275 per hour to an attorney with 14 years of experience and a rate of $150 an hour to an attorney with 4 years of experience); Carrier v. Weber Prop. Grp., L.L.C., 2017 WL 4226161, at *1 (E.D. La. Sept. 21, 2017) (awarding $4,981.25 in attorney's fees at a rate of $275 per hour to an attorney with 13 years of experience); Mark v. Covington City, C.A. No. 15-5977 "A"(4) (awarding $10,918 in attorney's fees to an attorney with 13 years of experience at a rate of $275 per hour, and at a rate of $150 per hour for an attorney with three years of experience); Elmwood, 2015 WL 1245770, at *3, 8 (awarding $38,283.20 in attorney's fees at a rate of $275 per hour for an attorney with 13 years of experience); Mark v. Sunshine Plaza, Inc., 2018 WL 1960022, at *6 (E.D. La. Apr. 26, 2018) (awarding $27,014.23 in attorney's fees at a rate of $275 per hour to an attorney with 15 years of experience).

III.     ANALYSIS

        A.     Reasonable Hourly Rates

Plaintiff seeks attorneys fees for a total of 234.6 hours expended by Mussman and Ku, each billing at a rate of $300 per hour. Record Doc. No. 42-3. Both Mussman and Ku state in their joint declaration that they have practiced law for 16 years. Record Doc. No. 39-2, at pp. 16-17. Mussman states that he has been "lead counsel in hundreds of ADA cases since 2004." Record Doc. No. 39-2, at p. 16. Ku attests that she "is currently in her sixteenth year of practice and has represented plaintiffs in numerous Title III ADA actions." Record Doc. No. 39-2, at p. 17. Her resume, Record Doc. No. 39-15, shows that she was admitted to practice in Louisiana and has worked in various capacities as an attorney for 16 years. She has practiced with Ku & Mussman since March 2012, representing plaintiffs in ADA cases during that time. Record Doc. No. 39-15, at p. 1. Cursory review of cases filed in this district show that she has been representing plaintiffs in ADA cases of counsel with Ku & Mussman at least since 2009. See, e.g., Price v. Taco Tico, Inc., et al., C.A. No. 9-3345 "R"(2).

An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested. LP&L, 50 F.3d at 329. In this case, plaintiff's attorneys have requested that the lodestar be computed at $300 per hour for both attorneys. Defendant argues that this hourly rate "should be reduced to rates consistent with Eastern District precedent," specifically, $275 per hour for a partner and $150 and $125 per hour respectively for senior and junior associates. Record Doc. No. 40, at p. 5. Plaintiff

attempts to show that the rate is within the prevailing market rates by attaching the affidavit of William Most, a New Orleans attorney. Record Doc. No. 39-14. Most states that he has been practicing law for only seven years and represents plaintiffs in civil rights and ADA cases. Id. at pp. 1-2. He swears that his hourly rate is $325 per hour, and that $300 per hour is a reasonable rate for both attorneys. Id. at 2. Plaintiff also notes that three years ago, Mussman was awarded an hourly rate of $275 per hour by Magistrate Judge Knowles of this court in one of Mussman's other, substantially similar ADA cases in which he represented the same plaintiff. See Elmwood, 2015 WL 1245770, at *2-3; Record Doc. No. 39-1, at p. 22. Magistrate Judge Knowles concluded at that time that "[c]onsidering the prevailing market rates in the Greater New Orleans area, and the reasonable fees set by the courts in this district, the Court finds that $275.00 per hour is a reasonable rate for the services of Mussman." Id. at *3.

Plaintiff's counsel argues that because Mussman has three more years of experience than he possessed when Elmwood was decided, and based on Most's affidavit, his reasonable hourly rate has increased to $300 per hour. Record Doc. No. 39-1, at pp. 22-23. I disagree with plaintiff's counsel and find that increasing his awardable hourly rate to $300 per hour on these grounds is unreasonable at this time. Instead, an hourly rate of $275 per hour, as has recently and consistently been found to be reasonable for lawyers with similar expertise and experience in ADA cases in this market, is reasonable. Only a little more than a year has lapsed since the most recent of these $275-per-hour awards in this

district. <u>Herbert</u>, 2017 WL 3216583 at *9. The future attainment of some milestone number of years of practice experience–such as 20 years–might justify an increase in plaintiff's counsel's awardable rate to $300 per hour at that time. For now, however, I find that $275 per hour is reasonable. Ku's comparable 16 years of experience qualifies her for the same reasonable hourly rate of $275 per hour.

In addition to the cases awarding $275 per hour, I find that $275 per hour also represents a reasonable blending of various other hourly rates awarded in other cases, some higher and some lower than $275 per hour. <u>See, e.g.,</u> <u>Mr. Mudbug, Inc. v. Bloomin' Brands, Inc.</u>, 2017 WL 736044, at *2 (E.D. La. Feb. 24, 2017), <u>aff'd</u>, 2017 WL 2274954 (E.D. La. May 25, 2017) (using lodestar method for discovery sanction and awarding hourly rates of $300, $240, $210 and $190 for attorneys with 17, 10, 4 and 1 years of experience, respectively); <u>Warder v. Shaw Grp., Inc.</u>, 2016 WL 3447950, at *2-3 (E.D. La. June 23, 2016) (using lodestar for discovery sanction and awarding hourly rates of $325 for partner with 14 years of experience, $300 for associate who nonetheless had 20 years of experience in complex commercial litigation and $130 for paralegal); <u>Banegas</u>, 2016 WL 6276779, at *2 (E.D. La. Oct. 27, 2016) (awarding $250 per hour for Fair Labor Standards Act work to the same attorneys as in <u>Calix v. Ashton Marine LLC</u>, 2016 WL 4194119, at *5 (E.D. La. July 14, 2016), <u>report & recommendation adopted</u>, 2016 WL 4180977 (E.D. La. Aug. 8, 2016), in which this court awarded $200 per hour for attorneys who had practiced for 5 years, but had little experience litigating FLSA cases); <u>Hobson v. Abe Dev.</u>

LLC, 2016 WL 4592170, at *2 (E.D. La. Sept. 2, 2016) (hourly rates of $250 and $275 in civil rights case to lawyers with "roughly ten years of experience"); Gahagan v. U.S. Customs & Border Prot., 2016 WL 3090216, at *14 (E.D. La. June 2, 2016) ($200 per hour for attorney with 8 years of experience in immigration and Freedom of Information Act cases); Loiacano v. DISA Global Solutions, 2016 WL 2926679, at *2 (E.D. La. May 19, 2016) (denying requested hourly rates of $630 and $435 for partners and $347 for an associate, and awarding $350 for partners, $205 for associate and $150 for paralegal as discovery sanction); Cacho v. Gusman, 2014 WL 4854737, at *6 (E.D. La. Sept. 29, 2014) (in civil rights action, awarding hourly rates of $185 for attorney with 11 years of experience and $150 for attorneys in practice for 3 to 5 years); Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC, 2014 WL 5039670, at *8 (E.D. La. Sept. 25, 2014) ($325, $275 and $225 per hour for attorneys with 19, 7 and 4 years of experience, respectively, in breach of contract case); Guity v. Lawson Envtl. Serv., LLC, 2014 WL 4723295, at *6-8 (E.D. La. Sept. 23, 2014) (hourly rates of $250 to $290 for partners and $150 to $175 for associates in indemnity case).

For the reasons discussed above and based on the foregoing authorities, I find $275 per hour is the reasonable prevailing rate to be applied for each of plaintiff's attorneys at the first step of the lodestar evaluation.

B.    Reasonable Hours

Next, I must determine the reasonable number of hours that plaintiff's counsel expended on this litigation. Plaintiff seeks a total of 234.6 hours, including 203.9 hours billed by Mussman and 30.7 hours billed by Ku. Record Doc. Nos. 42-3.[2] I find that the attorneys' time is generally well-documented; however, the exercise of billing judgment concerning the invoices is inadequate. For the reasons discussed below, I find that the time expended by plaintiff's attorneys must be divided into two distinct components and evaluated separately.

(1) Time Incurred Until Entry of Order Granting Joint Motion to Dismiss

The first component of time incurred consists of the hours expended from the outset of the litigation through the order granting the parties' joint motion to dismiss the matter with prejudice on May 10, 2018, Record Doc. No. 33. These are the hours spent on the substantive portion of the case, including client consultation, investigation, pleading, disclosures, settlement negotiations and settlement consummation. This time is reflected in plaintiff's submissions at Record Doc. No. 42-3, pp. 1-8. I find that some efforts have been made to exercise billing judgment in this portion of the case, but those efforts are inadequate.

Plaintiff's counsel's time and task reports indicate that they wrote off only some duplicative and excessive time entries. Record Doc. Nos. 39-12; 42-3. Based on my review

---

[2] See supra note 1.

of plaintiff's supplemental time records, a percentage reduction is warranted because plaintiff exercised inadequate billing judgment. As an initial matter, I reduce to zero (0) all hours billed by plaintiff's counsel for attorney travel and for time spent on Mussman's pro hac vice application. Plaintiff is a resident of Louisiana. I see no reason why this case required out-of-state counsel, with the added travel and other costs that the hiring of such counsel requires. Numerous local lawyers known to this court have ADA expertise. Plaintiff has employed local counsel in prosecuting exactly this kind of case in other lawsuits he has pursued in this court. See, e.g., Gilmore v. Checkers Drive-In Restaurants, Inc., C.A. No. 11-1794 "N"(2); Gilmore v. Wendy's Intern., Inc., C.A. No. 11-1796 "I"(1); Gilmore v. Walgreen Louisiana Co., Inc, C.A. No. 11-1797 "C"(4). Accordingly, hours for entries such as "travel to and from New Orleans from FL to conduct walkthrough of Zoo" on June 15, 2016, and "initial preparation of Mussman affidavit in support of [pro hac vice] motion . . . " on June 20, 1017, are reduced to zero (0).[3] In addition, plaintiff's contemporaneous time sheets, Record Doc. No. 42-3, show inadequate billing judgment, based on the following illustrative examples of block billing, vague, excessive and duplicative entries:

- 1.1 hours on May 20, 2016, to "research Google maps/street view of Zoo premises to pinpoint client barriers." (excessive, non-legal, duplicative of site walkthrough);

---

[3] I am aware of other opinions in which this court has awarded fees and costs for attorney travel. See, e.g., Elmwood, 2015 WL 1245770, at *7-8. I am unpersuaded that this matter required the assistance of out-of-state counsel and have set out my reasons in the body of this order.

- 0.5 hours on June 17, 2016, for "correspondance between [Mussman] and [Ku] re: discussion of pre-suit investigation and client meeting" (vague, block billing);

- 1.1 hours on February 10, 2017, to "research public records online to determine operator of Zoo . . . review Audubon Nature Institute documents on its website re: same. . . " (excessive)

- 0.2 hours on February 10, 2017, for "correspondence w/client re: status of potential case filing; correspondence with [Mussman] on same" (block billing)

- 0.2 hours on February 13, 2017, for "correspondence w/[Mussman] re: feasibility memo (not originally billed)" (duplicative, Mussman billed 1.1 hours for the same work);

- 0.5 hours on February 13, 2017, for "review pre-suit inspection report; correspondence w/client re: same" (vague, block billing);

- 2.1 hours on April 19, 2017, for "property walkthrough of Zoo to re-verify barriers (excessive, redundant);

- 0.9 hours on June 20, 2017, for "initial preparation of Mussman['s] affidavit in support of his [pro hac vice] motion; prepare motion and proposed order for [pro hac vice] for [Ku's] review; prepare registration form" and 0.5 hours for "review Eastern District of Louisiana . . . local rules on [pro hac vice] admissions/application." (Mussman was admitted to practice in this court pro

hac vice in Elmwood, 2015 WL 1245770, a case involving the same plaintiff. This amount of time spent on this task is excessive.)

- 0.9 hours on July 7, 2017, July 10, 2017, and July 11, 2017, for several entries bearing the vague description "correspondence w/AM re: inspection dates" (redundant; two entries also read "prepare/revise R.34 inspection notice");

- 0.9 hours on July 31, 2017, for "review amended scheduling order and Pretrial Conference notice form; correspondence with GS re: same" (excessive);

- 8.2 hours on September 26, 2017, September 27, 2017, and September 28, 2017, to "review [ADA expert report], make comments on same" (excessive, redundant);

- 3.1 hours on December 7, 2017, to "review defendant's website . . . to obtain additional documents responsive to our discovery requests" and "detailed review of new documents obtained on defendant's website . . . ) (excessive, redundant); and

- 46.1 hours between February 13, 2018 and March 14, 2018, to draft Motion for Summary Judgment (excessive due to frequent experience in ADA litigation; largely unnecessary in light of serious, ongoing, ultimately successful settlement efforts; see, e.g., Record Doc. Nos. 19 at ¶ 8, 26).

Plaintiff's counsel have filed numerous lawsuits in this court since 2010.[4] Plaintiff himself has been a party to at least 20 ADA lawsuits filed in this court.[5] In this case, with these lawyers who frequently prosecute exactly this kind of case in this court, this litigation should have been a straightforward, more efficiently handled matter based upon the same kinds of papers filed by these lawyers in other cases, beginning with a paralegal simply retrieving previously filed motions and legal research, and ending with a lawyer's finalization of those documents. As noted above, Magistrate Judge Knowles found that "the complaints and the pleadings in a majority of the other lawsuits . . . [are] nearly identical to the ones filed here. . . . the law in each case is the same. . . .[and thus] much of the legal research [is] largely unnecessary." Elmwood, 2015 WL 1245770, at *5-6. The ADA "was never intended to turn a lofty and salutary mission into a fee-generating mill for some

_____

[4] See, e.g., Price v. Boyd Gaming Corp., et. al., C.A. No. 10-397 "S"(1); Price v. Richards Clearview, L.L.C., C.A. No. 10-398 "F"; Price v. Folmar Kenner, L.L.C., C.A. No. 11-2770 "E"(4); Gilmore v. Causeway L.L.C., d/b/a Causeway L.L.C. of Delaware, C.A. No. 13-060 "H"; Elmwood, 2015 WL 1245770; Gomez v. Churchill Downs Louisiana Horseracing Co., L.L.C., C.A. No. 14-1792 "B"(2), Gilmore v. Churchill Downs Louisiana Horseracing Co., L.L.C., C.A. No. 15-5989 "N"(3); Price v. SMG, et. al., C.A. No. 09-3495 "A"(3).

[5] See, e.g.,Gilmore v. Checkers Drive-In Restaurants, Inc., C.A. No. 11-1794 "N"(2); Gilmore v. Wendy's Intern., Inc., C.A. No. 11-1796"I"; Gilmore v. Walgreen Louisiana Co., Inc, C.A. No. 11-1797 "C"(4); Gilmore v. B&G Diversified Concepts, C.A. No. 11-2854 "C"(3); Gilmore v. Novco Realty Co., C.A. No. 11-2856 "R"(4); Gilmore v. Belle Terre Plaza, L.L.C., C.A. No. 11-3106 "C"(3); Gilmore v. Riverwood Shopping Center, L.L.C., C.A. No. 11-03107 "A"(3); Elmwood, 2015 WL 1245770; Gilmore v. Revenue Properties Airline Limited Partnership, C.A. No. 13-123 "J"; Gilmore v. Causeway L.L.C., d/b/a Causeway L.L.C. of Delaware, C.A. No. 13-060 "H"; Gilmore v. PMAT Algiers Plaza, L.L.C., C.A. No. 15-834 "I"(5); Gilmore v. Lake Charles PC, L.P.,, 2016 WL 3039813 (E.D. La. May 27, 2016); Gilmore v. Cajun Operating Co. of Delaware, C.A. No. 15-5990 "I"(1); Gilmore v. Seville Plaza, L.L.C., et. al., C.A. No. 15-6049 "B"(3); Gilmore v. Churchill Downs Louisiana Horseracing, Co., L.L.C., C.A. No. 15-5989 "N"; Gilmore v. Robco, L.L.C., C.A. No. 16-2953 "F"(3); Gilmore v. Troxie Motel, Inc., C.A. No. 16-10984 "G"(5); Gilmore v. Tat-lyn L.L.C., C.A. No. 17-2646 "E"(2); Gilmore v. B. D. & D. Investments, Inc., C.A. No. 17-2304 "G"(3); Gilmore v. Crais, C.A. No. 17-2325 "N"(5).

lawyers to exploit the statutory scheme to see how many billable hours they could cram into a case." Brother v. Miami Hotel Invs., Ltd., 341 F. Supp. 2d 1230, 1233 (S.D. Fla. 2004). As here, when plaintiff's time sheets display inadequate billing judgement, a percentage reduction is warranted. See Banegas, 2016 WL 6276779, at *1-2. Accordingly, I find that a 40% reduction in plaintiff's fees sought for the substantive portion of the case is appropriate. These reductions reduce the time for which compensation is sought for these tasks from 142.4 hours for Mussman to 85.44 hours, and from 23.1 hours for Ku to 13.86 hours for the substantive portion of the case.

Based on the foregoing findings, I conclude that the following reasonably expended time multiplied by the reasonable hourly rates set out above yields the following awardable amounts:

| Professional | Reasonable Hours (Minus Reduction) | Reasonable Hourly Rate | Total: Time (x) Rate |
|---|---|---|---|
| L. Mussman | 85.44 | $275 | $23,496.00 |
| G. Sims Ku | 13.86 | $275 | $3,811.50 |
| | | Total Lodestar for Substantive Case: | $27,307.50 |

(2)     Time Incurred on Motion for Fees

The second aspect of plaintiff's counsel's request for attorney's fees – hours spent preparing and litigating the motion for an attorney's fees award – is grossly excessive and exhibits a substantial failure on the part of plaintiff's counsel to exercise billing judgment. The total time spent by plaintiff's counsel in litigating their fee request, reflected at Record

Doc. No. 42-3 at pp. 8-12, is 69.1 hours. Plaintiff's counsel seeks compensation for 165.5 hours for the substantive portion of the case. 165.5 plus 69.1 is 234.6 hours. The amount sought for the fee request is almost 30% of the total sought. To grant compensation for a fee request that reflects such a high percentage of the total time sought would elevate the fee contest to precisely the kind of second major litigation that must be avoided.

In this case, preparation of a motion for attorney's fees should have been a straightforward matter based upon the same kinds of papers counsel have filed in other cases. Awardable rates for the lawyers of plaintiff's counsel's firm in this case have been the recent subject of evaluation by this court. Preparation of a motion for attorney's fees should not constitute nearly a third of the total time expended in this matter, particularly as this case was resolved by consent decree and without much court activity. Plaintiff's counsel's contemporaneous time sheets contain entries that illustrate lack of billing judgment in the fee application, including:

- 1.7 hours on July 16, 2018, to "conduct legal research regarding lodestar and Johnson factors for motion for fees" (excessive);

- 0.2 hours on August 1, 2018, to "review defendant's counter-offer on fees; discuss w/client and [Ku]; draft email MD responding to same" (vague, block billing);

- 2.2 hours on August 17, 2018, to "assist William Most to prepare declaration in support of motion for fees; correspondence w/William Most as fee expert re: same" (excessive);

- 2.5 hours on August 21, 2018, to "edit/revise memo of law for grammar/spelling errors" (excessive);

- 2.7 hours on August 21, 2018, to "check all citations for errors" (excessive);

- 3.3 hours on August 22, 2018, to <u>again</u> "review . . . motion for fees, memo and decl. w/all attachments, edit as necessary" (duplicative, excessive in light of hours already expended); and

- 2.0 hours on September 10, 2018, on "initial draft of hypothetical junior associates section of reply" (excessive).

Under these circumstances, I find that a 65% reduction is appropriate, to remedy plaintiff's counsel's failure to exercise billing judgment in this second component of the case. These reductions reduce the time for which compensation is sought for these tasks from 61.5 hours for Mussman to 21.525 hours, and from 7.6 hours for Ku to 2.66 hours.

Based on the foregoing findings, I conclude that the following time reasonably expended multiplied by the reasonable hourly rates set out above yields the following awardable amounts:

| Professional | Reasonable Hours (Minus Reduction) | Reasonable Hourly Rate | Total: Time (x) Rate |
|---|---|---|---|
| L. Mussman | 21.525 | $275 | $5,919.37 |
| G. Sims Ku | 2.66 | $275 | $731.50 |

Total Lodestar for Fee Application: $6,650.87

(3) <u>Summary and Johnson Factors</u>

After eliminating the other <u>Johnson</u> factors that are subsumed in the lodestar or prohibited from consideration, only four factors remain: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. The customary fees have already been evaluated above

in establishing reasonable hourly rates. There is no indication that the requested fee reflects the professional relationship between plaintiff and his counsel. The case was not undesirable. Awards in similar cases have already been taken into account above in establishing the hourly rates. Adding the reasonable amount of awardable fees for the substantive and fee application components of the case yields a total awardable amount of attorneys fees of $33,958.37.

C. Costs

Plaintiff's counsel seeks reimbursement for $9,104.57 in costs and related expenses. Record Doc. Nos. 39-12, at p. 11; 42-3, at p. 12. Specifically, plaintiff seeks $4,500.00 for his ADA expert consulting fee; $99.95 for his ADA expert airfare; $2,000.00 for his financial expert fees; $400.00 in filing fees; $140.00 for service of process costs; $325.07 for his attorney's pre-suit investigation airfare; $133.06 for his attorney's pre-suit investigation car rental; $990.40 for airfare for his attorney's client meeting and ADA walkthrough; $213.80 for his attorney's lodging for his client meeting and ADA walkthrough; $100.00 for his attorney's pro hac vice fee application; $19.00 for his attorney's certificate of good standing for his pro hac vice application; and $102.25 for photocopies. Id.

Defendant concedes that $6,920.00, incurred by plaintiff for his ADA expert's fee, financial expert's fee,[6] filing fee and $20 to effect service, is recoverable. Record Doc. No. 51, at p.5. Defendant disputes plaintiff's request to recover costs and expenses for plaintiff's expert's and attorneys' airfare, taxi and parking, lodging, pro hac vice application expenses, photocopies and service expenses more than $20. Id.

Plaintiff seeks reimbursement for these costs and expenses under both 28 U.S.C. § 1920 and 42 U.S.C. § 12205. Record Doc. No. 39-1, at p. 21. Section 12205 provides, in pertinent part:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . .

Section 12205 thus allows for possible recovery of both "costs," which the courts generally interpret to mean only those costs permitted by 28 U.S.C. § 1920, and "litigation expenses."

---

6. Financial expert fees are recoverable. The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The Act defines discrimination as including "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 42 U.S.C. § 12182(b)(2)(A)(iv). "Existing facilities" includes those structures built prior to the Act's effective date, January 26, 1992. Tatum v. Doctor's Assocs., Inc., 2016 WL 852458, at *3 (E.D. La. Mar. 4, 2016) (citing Greer v. Richardson Indep. Sch. Dist., 752 F. Supp. 2d 746, 752 (N.D. Tex. 2010)). Plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable. Tatum, 2016 WL 852458, at *7 (citing Johnson v. Gambrinus Company/Spoetzl Brewery, 116 F.3d 1052, 1059 (5th Cir. 1997)). To show whether barrier removal was readily achievable, plaintiff reasonably hired both an ADA expert and financial expert to conduct the multi-factor analysis set out in 42 U.S.C. § 12181(9).

In statutory construction, "[t]he word 'may' customarily connotes discretion." Jama v. Immigr. & Customs Enforcemt., 543 U.S. 335, 346 (2005). The permissive "may" in a fee- or cost-shifting statute like Section 12205 indicates that the amount of any award is committed to the court's sound discretion. Grant v. Chevron Phillips Chem. Co., 309 F.3d 864, 875 (5th Cir. 2002); Abshire v. Louisiana, 2009 WL 50178, at *5 (M.D. La. Jan. 7, 2009), aff'd sub nom. Admiral Ins. Co. v. Abshire, 574 F.3d 267 (5th Cir. 2009).

In addition, Rule 54(d)(1) of the Federal Rules of Civil Procedure provides, in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1172 (2013). Even if a federal statute speaks to an award of costs in a particular type of case, "Rule 54(d)(1) independently authorizes district courts to award costs to prevailing parties." Id. at 1174 n.5. Rule 54(d)(1) "does not require courts to award costs to prevailing [parties]," but permits the court in the exercise of its discretion to consider the particular circumstances of the case. Id. at 1178 n.9 (emphasis in original). Thus, "a court has discretion to award costs" under Rule 54(d)(1). Id. at 1174.

Limiting the discretion of the federal court to award costs under Rule 54(d)(1) is

28 U.S.C. § 1920, under which

> a court may tax the following costs: fees of the clerk and marshal; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and copies of papers necessarily obtained for use in the case; docket fees; compensation of court-appointed experts, interpreters, and special interpretation services. The Supreme Court has indicated that federal <u>courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary</u>.

<u>Mota v. Univ. of Tex.</u>, 261 F.3d 512, 529 (5th Cir. 2001) (citing <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 444-45 (1987)) (quotation and additional citations omitted) (emphasis added); <u>accord</u> <u>Gagnon v. United Technisource, Inc.</u>, 607 F.3d 1036, 1045 (5th Cir. 2010). In the instant case, Section 12205 is a statutory authorization to the contrary.

Plaintiff argues that travel costs (attorney and expert) and expert fees are provided for under Section 12205, along with some other costs. Record Doc. No. 39-1, at p. 22. He has cited case law from courts <u>outside</u> the Fifth Circuit in support of his expense request. <u>See</u>, <u>e.g.</u>, <u>Hutchinson ex rel. Julien v. Patrick</u>, 636 F.3d 1, 17 (1st Cir. 2011) ("reasonable costs and expenses for travel, printing, and photocopying can be recovered in a fee-shifting proceeding"); <u>Hansen v. Deercreek Plaza, LLC</u>, 420 F.Supp. 2d. 1346, 1353 (S.D. Fla. 2006) ("Section 12205 provides direct authority for expert fees");

Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1259 (10th Cir. 2005) (fee-shifting prevailing party reimbursed for "services such as long-distance telephone charges, Federal Express deliveries, postage charges, photocopy charges, fees paid to investigative services, and other professional fees paid by the law firm"). Record Doc. No. 39-1, at pp. 22-23. At least one court in this Circuit has noted that "litigation expenses" are defined in the preamble to the ADA as "'items such as expert witness fees, travel expenses, etc.'" Jones v. White, 2007 WL 2427976 at *8 (S.D. Tex. Aug. 22, 2007).

Reasonableness remains the touchstone for an award of either costs or litigation expenses. Whether "expenses are reasonable is committed to the sound discretion of the trial judge," even when recovery is authorized by statute. Assoc'd Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd., 919 F.2d 374, 380 (5th Cir. 1990). The court will not merely rubber-stamp an expense request, especially one as large as in the instant case. Before the court can tax costs, it must find that the costs were necessarily incurred in the litigation and this finding must be based on "some proof of the necessity." Holmes v. Cessna Aircraft Co., 11 F.3d 63, 64 (5th Cir. 1994) (citing Fogleman v. ARAMCO, 920 F.2d 278, 286 (5th Cir. 1991); Studiengesellschaft Kohle v. Eastman Kodak, 713 F.2d 128, 133 (5th Cir. 1983)) (emphasis added). "The Court does have discretion to allow unverified costs where it is clear from the nature of the cost that it was necessarily incurred." Johnson v. Rhode Island, 2000 WL 303305, at *13

(D.R.I. Mar. 22, 2000) (quotation omitted)(citing <u>Phetosomphone</u>, 984 F.2d at 9) (emphasis added).

Defendant concedes and I find that $6,920.00 in costs for an ADA expert's fees ($4,500.00), financial expert's fees ($2,000.00), filling fees ($400.00), and $20.00 for service of process expenses were necessarily incurred, reasonable and recoverable. I also find that the additional $120.00 expended by plaintiff for service of process (for a total of $140.00) and $102.25 for photocopy expenses were necessarily incurred, modest and reasonable. Thus, the total amount of costs and expenses that is either uncontested or reasonably and necessarily incurred is $7,142.25.

Nothing in the record establishes that the other costs or expenses were necessarily or reasonably incurred. For the reasons discussed above, I see no reason why this case required out-of-state counsel or an out-of-state expert, with the associated additional travel-related expenses that such employment involves. Plaintiff chose to employ out-of-state counsel and experts in this case. There has been no showing that equally competent other professionals, who would not incur these additional expenditures, were not available. The court will exercise its discretion <u>not</u> to award costs and expenses related to travel and the <u>pro hac vice</u> application. I find that plaintiff should recover only $7,142.25 in costs.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that defendant, Audubon Nature Institute, Inc., pay to plaintiff, Wayne Gilmore, $33,958.37 in reasonable attorney's fees and $7,142.25 in costs, all as reflected above.

New Orleans, Louisiana, this ____5th____ day of November, 2018.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE